FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2005 AUG -2  P 4: 34

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN R. WILKERSON         :

v.                          :     Civil No. L-03-3219

WARDEN J. SACCHET et al.    :

## MEMORANDUM

*Pro se* Plaintiff Steven R. Wilkerson ("Wilkerson") filed this 42 U.S.C. § 1983 action alleging that correctional officers and other personnel at the Roxbury Correctional Institution violated his constitutional rights. On November 16, 2004, the Court granted Defendants' Motion for Summary Judgment as to all but one of Wilkerson's claims. The Court gave Wilkerson two weeks to submit an affidavit in support of his excessive force claim. Wilkerson was directed to explain what happened to him and state whether there was anyone who could corroborate his allegations. Wilkerson timely filed a response to the Court's Order.

Now pending are: (i) Defendants' Motion for Summary Judgment on Wilkerson's excessive force claim, and (ii) Wilkerson's Motion for Reconsideration of the Order denying his Motion to Appoint Counsel.[1] Because the motions are fully briefed, no hearing is necessary. See Local Rule 105.6 (D.Md. 2004). For the reasons stated below, the Court will, by separate Order, DENY Defendants' Motion for Summary Judgment, GRANT Wilkerson's Motion for Reconsideration, and APPOINT pro bono counsel to represent Wilkerson.

### I.     BACKGROUND

In 2003, Wilkerson was an inmate in Housing Unit #5 at the Roxbury Correctional Institution. On June 24, 2003, Correctional Officer Albino Trujillo ("Trujillo") was conducting a

---

[1] Wilkerson has also filed a Motion to Withdraw his Suit against Warden Sacchet. The Court will defer ruling on this motion until counsel has been appointed.

"cross-over" count. When he approached Wilkerson's cell, he saw that the food slot was open and Wilkerson's arms were hanging out of the opening. Wilkerson explained to Trujillo that, because of his heart condition and the high temperatures in the prison, another officer had permitted him to keep his food slot open to improve the air circulation in his cell. Trujillo ordered Wilkerson to move his arms so that he could close the food slot.

The parties dispute what happened next. Wilkerson claims that before he could comply, Trujillo slammed the food slot door on his arm. Wilkerson states that Trujillo opened and closed the food slot door on his arm five times in a row. Trujillo claims that Wilkerson complied with his order. But as he pushed the slot closed, Wilkerson thrust his arm into the slot, causing his arm to be caught between the slot and the door. Trujillo states that he opened the slot and Wilkerson pulled his arm back into the cell without further incident.

The parties do agree, however, that Wilkerson was immediately seen by the medical department for injuries to his arms.

## II.     STANDARD OF REVIEW

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court must view the facts, and all reasonable inferences to be drawn from them,

in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Prop., 810 F.2d 1282, 1286 (4th Cir. 1987).

## III.  ANALYSIS

The Eighth Amendment protects inmates from inhumane treatment and conditions while imprisoned. In evaluating an excessive force claim, a Court must analyze both subjective and objective components. See Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996). To meet the subjective component, a prisoner must show that the force was applied "maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U. S. 1, 6-7 (1992). The objective element is established if there is proof of more than *de minimis* pain or injury. Williams, 77 F.3d at 761.

### A.  Wilkerson Suffered More Than *De Minimis* Injuries

Defendants argue that summary judgment must be granted because Wilkerson alleges the extent of only *de minimis* injuries. The extent of Wilkerson's injuries is a matter of dispute. Viewing the evidence in a light favorable to Plaintiff, his allegations are sufficient to survive summary judgment.

Immediately after the incident, Wilkerson was taken to the medical department. The nurse who treated Wilkerson noted that his right forearm was scratched and that his arm was swollen from his fingers to his forearm. Two days later, Wilkerson was again taken to the medical department. The doctor noted that Wilkerson could not move his fingers and that his right arm had a limited range of movement. Although x-rays revealed that there was no fracture, Wilkerson was evaluated for physical therapy. The therapist noted that two months after the incident, Wilkerson was holding his arm in a "protective position" and "was clearly not able to

3

use [his] hand." Because of the pain, the therapist concluded that Wilkerson would not tolerate physical therapy. On November 17, 2003, Wilkerson was seen by a neurologist. In his report, the neurologist wrote that "[Wilkerson] shows mild weakness in the grip of his right hand . . . tenderness noted over forearm, front and back . . . Mild swelling noted for soft tissue of right hand."

Based on this record, a rational finder of fact could find that Wilkerson's injuries were more than *de minimis*. Accordingly, the Court concludes that Wilkerson is entitled to present his § 1983 claim of excessive force to a jury.[2]

### B.   Defendants are Not Entitled to Qualified Immunity

Defendants also argue that they are entitled to summary judgment based on the doctrine of qualified immunity. Defendants claim that their conduct did not violate clearly established constitutional rights of which a reasonable person would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). The Court must also reject this argument. The applicable case law is clearly established. No reasonable correctional officer could believe that he was acting in accordance with the law if he did what Wilkerson claims. Accordingly, Defendants have not met their burden of showing that they are entitled to summary judgment on the basis of the qualified immunity defense.

### IV.   CONCLUSION

For the reasons stated herein, the Court will, by separate Order, DENY Defendants' Motion for Summary Judgment, GRANT Wilkerson's Motion for Reconsideration, and

---

[2] Moreover, a jury will decide the disputed questions of material fact about how the incident occurred, the amount of force used, and whether the force was applied in good faith or with wrongful intent.

4

APPOINT counsel to represent Wilkerson.

The Court will hold a hearing after counsel enters an appearance on Wilkerson's behalf. The purpose of the hearing will be to: (i) determine whether Plaintiff's counsel wishes to reopen discovery, (ii) develop a schedule for discovery (if necessary) and trial, (iii) determine whether the parties wish the case to be referred to a Magistrate Judge for a settlement conference, and (iv) determine whether the parties will consent to proceed before a Magistrate Judge for trial.

Dated this 2nd day of August, 2005.

_____
Benson Everett Legg
Chief Judge